## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| TRAVIS KRICHMAN and TCT HOLDINGS, LLC d/b/a TANNION, LLC d/b/a FFDFY Products, LLC, d/b/a FLUFF FRIENDS<br>*Plaintiffs*<br><br>v.<br><br>JUST ONE DIME, LLC; JUST ONE DIME COACHING, LLC, d/b/a DONE FOR YOU BY JUST ONE DIME; VERITUS TEXAS ONE, LLC, f/k/a VERITUS A SERIES OF EMBUE, LLC; ACTONICUS TEXAS ONE, LLC, f/k/a ACTONICUS, A SERIES OF EMBUE, LLC; TRAVIS S. KNIEP; BRETT GEORGE; JOSIAH KNIEP; and KIMBERLY KNIEP<br>*Defendants* | § § § § § § § § § § § § § § § § § § | Case Number:<br>1:22-CV-1146 |

## PLAINTIFF KRICHMAN'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs, Travis Krichman ("Plaintiff" or "Mr. Krichman") and TCT Holdings, LLC, d/b/a Tannion, LLC, d/b/a FFDFY Products, LLC, d/b/a Fluff Friends, by and through their undersigned counsel, file this Original Complaint against Defendants Just One Dime, LLC; Just One Dime Coaching, LLC, d/b/a Done for You By Just One Dime; Veritus Texas One, LLC, f/k/a Veritus, a Series of Embue,

LLC; Brett George, Josiah Kniep, Travis S. "Seth" Kniep (these Defendants collectively referred to herein as "JOD" or "JOD Defendants"); Actonicus Texas One, LLC, f/k/a Actonicus, a Series of Embue, LLC; and Kimberly Kniep, and allege as follows:

## I. THE PARTIES

1.     **Plaintiff Travis Krichman** is an individual residing in the state of New Jersey.

2.     **Plaintiff TCT Holdings, LLC d/b/a Tannion, LLC, d/b/a FFDFY Products, LLC, d/b/a Fluff Friends** is a limited liability company registered in the State of New Mexico.  Travis Krichman is its sole member.

3.     **Defendant Just One Dime, LLC,** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Travis S. Kniep, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729.

4.     **Defendant Just One Dime Coaching, LLC, d/b/a Done for You By Just One Dime** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas, 78731.

5.     **Veritus Texas One, LLC, f/k/a Veritus, a Series of Embue, LLC** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas, 78731.

6.     **Actonicus Texas One, LLC, f/k/a Actonicus, a Series of Embue, LLC** is a limited liability company organized under the laws of the State of Texas. Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas, 78731.

7.     **Defendant Travis. S. "Seth" Kniep** is an individual residing in Austin, Texas, in Travis County.  He may be served with process at his place of business, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729, or wherever he may be found.

8.     **Defendant Brett George** is an individual employed by a company in Austin, Texas. He may be served with process at his place of business, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729; at his residential address, 3611 Blue Stem Drive, Tuttle, Oklahoma 73089; or wherever he may be found. Defendant George was the sole member of N2 Ecom, which is now inactive.

9.     **Defendant Josiah Kniep** is an individual residing in Austin, Texas, in Williamson County.  He is a co-founder and CEO of Just One Dime.  He may be served with process at his place of business, 8516 Anderson Mill Road, Suite 200, Austin Texas, 78729; at his residence, 13306 Perthshire Street, Austin, Texas, 78729; or wherever he may be found.

10.    **Defendant Kimberly Kniep** is an individual residing in Austin, Texas, in Travis County.  She is the wife of Defendant Travis S. Kniep and the mother of Defendant Josiah Kniep.  She may be served at 13306 Perthshire Street, Austin, Texas, 78729; 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729; or wherever she may be found.

## II. <u>PERSONAL JURISDICTION</u>

11.    This Court has personal jurisdiction over the corporate Defendants because they are organized and have a registered agent in Texas.

12.    Defendant Travis S. Kniep is a resident of Texas.

13.    Defendant Josiah Kniep is an individual who resides in Texas and has purposely availed himself of the laws and protections of the state of Texas by working full-time for a Texas company.

14.    Kimberly Kniep is a resident of Texas.

15.     Brett George is an individual who has purposely availed himself of the laws and protections of the state of Texas by working full-time for a Texas company.

16.     Based on their general and specific contacts with the State of Texas, Defendants have personally availed themselves of the privilege of conducting activities within the State of Texas and have minimum contacts with the State of Texas.

17.     Additionally, Paragraph 14 of the Services Agreement between Tannion, LLC and Just One Dime ("the Services Agreement"), the contract that governs in this matter, provides, in part:

> Both parties agree that any litigation or arbitration between the parties will take place in Travis County, Texas.  The parties hereto consent to and waive any objection to personal jurisdiction or venue in any forum located in that county, the personal jurisdiction and the exclusive venue of all federal and state courts in Travis County, Texas, for hearing all disputes under this Agreement.

### III.  SUBJECT MATTER JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is over $75,000.00. There is also complete diversity of citizenship between the parties.

19.     Furthermore, this Court has subject matter jurisdiction under 28 USC § 1331, as this case raises a federal question under the laws of the United States.

20.     Venue is proper in this district under 28 U.S.C. §1391(b)(1), because the JOD Defendants reside and/or work in this district.

21.     Specifically, all but one of the Defendants are located in Travis County, Texas, part of the Austin Division of the Western District of Texas; and the remaining Defendant is employed by a company in Travis County.

## IV.  CONDITIONS PRECEDENT

22.     All conditions precedent to this action have been performed, have occurred, or have been waived.

## V. STATEMENT OF FACTS

### A.  Done For You's Program & Promises

23.     Done For You ("DFY") by Just One Dime ("JOD") is a group of companies led by Travis S. "Seth" Kniep that pitches itself as a "turnkey service" which "turns your investment into a full-blown business on Amazon which we manage end-to-end, making it a passive investment for you."[1]

_____

[1] *See* Exhibit 1, Power Point Presentations.



Invest in the **fastest growing** market platform on the planet today.

Invitation by application only

**EXHIBIT 1**

24.     Travis Kniep makes it clear in recruitment videos that JOD does not provide coaching or training for its "Done For You" clients (also abbreviated as the "DFY Program by JOD"), as all work is done by JOD.  JOD further pledges that it launches "only high ticket products with strong margins," and that "[i]nstead of going for high sales velocity at razor thin margins, we sell products with huge profit chunks per sale."[2]

25.     JOD advertises that it has its own Chinese staff on salary at a warehouse in China, which gives it a huge leg up on the competition.

---

[2] *Id.*

26.     JOD claims it is highly selective in choosing its investors, and it goes through the motions of screening prospective investors.

27.     In truth, JOD accepts anyone and everyone who will pay its initiation fees.  This results in many of its investors competing against each other for sales of essentially the same products.

28.     In a cash flow example using a product that sells for $100, JOD asserts that $60 goes to costs (including $15 to Just One Dime) and the remaining $40 goes to the seller.[3]

29.     Sadly, what Mr. Krichman has learned after sinking thousands of dollars into the JOD program is that it does *not*, in fact, provide turnkey service, it does *not* provide high-ticket items, and it does *not* provide anything approaching a 40% cut to the seller.

30.     JOD promises that investors will eventually be able to resell their JOD businesses for at least 50 times their original investments.[4]   A video entitled "Amazon Automation – Risk For Thee, None For Me" from YouTuber Coffeezilla

---

[3] *See* Exhibit 2, 9/17/2020 welcome e-mail from Defendant Kniep to Mr. Krichman.
[4] *See* Exhibit 3, JOD YouTube video "Amazon Automation – FBA Business Run for You" featuring Travis Kniep (Streamed live on July 31, 2020), with accompanying Transcript. Note: video exhibits will be provided to the Court via flash drive.

features a clip of Defendant Kniep stating that a conservative return on investment within 12 months is 200%.[5]

31.     Interestingly, that statement is redacted from the more recent versions of the video being used by JOD.

32.     But JOD's eventual removal of this guarantee from the video does not negate the fact that numerous JOD customers, including Plaintiff Travis Krichman, relied on it to their detriment.

### B. *Plaintiff Travis Krichman*

33.     Mr. Krichman has a degree in mechanical engineering. He currently works full-time as a project manager for a multinational pharmaceutical company.

34.     In 2020, Mr. Krichman began to dabble in selling products on Amazon as a "side hustle", but with only minimal success, as he did not have a great deal of knowledge about online sales. Mr. Krichman was persuaded by JOD's advertising that he could do better by investing with them and allowing them to do most of the groundwork.

---

[5] *See* Exhibit 4, at https://www.youtube.com/watch?v=r_EfpOV2VV0, at 3:58.

35.     However, instead of helping Mr. Krichman build a profitable Amazon store, JOD caused him to lose a substantial amount of money.

### C. JOD Services Agreement

36.     On September 21, 2020, Plaintiff Travis Krichman (signing on behalf of TCT Holdings, LLC for Tannion, LLC) entered into a Services Agreement with Just One Dime ("JOD") in which JOD stated it would be "building, managing, optimizing and scaling an Amazon store" for Mr. Krichman. [6]

37.     JOD is one of the numerous trade names used by Defendant Just One Dime Coaching, LLC. "Exhibit A" of the Services Agreement ("the Agreement") contains a laundry list of services JOD (referred to in the Agreement as "The Company") promised to supply for Mr. Krichman ("the Client"):[7]

38.     These services included finding unique, high-quality products with favorable profit margins, applying for brand protection programs on Amazon to prevent others from "piggy-backing" on Mr. Krichman's listings; and building, testing, and optimizing Amazon PPC ads on Mr. Krichman's listings to increase their rankings on the website.

---

[6] *See* Exhibit 5, Services Agreement, including Exhibits A-C.
[7] *Id.*

39.    The Agreement also promised that JOD would respond to critical purchaser reviews and negative seller feedback.

40.    Exhibit C of the Agreement[8] includes a rundown of financial responsibilities and payouts assigned to JOD and to Mr. Krichman, respectively. Exhibit C provides:[9]

> Company is providing the service of building and managing the store.
>
> Client is paying for all business costs including, but not limited to manufacturing, shipping, customs & duties, photography, product videos, PPC [pay per click advertising], Amazon FBA fees, etc.
>
> FBA fees, the monthly Amazon professional account fee, and PPC fees will be paid to Amazon by the Client directly.
>
> All other expenses will be paid by Client to the Company and then Company will pay the vendor directly.  This can include but is not limited to the photographer, supplier, social media platform building, keyword and SEO optimization off the Amazon platform, or any other third party who provides a service to help grow the store.  The Company will invoice the Client, payable within 7 days of sending the invoice.
>
> The Client will pay the Company for its services as follows:
>
> - $40,000 for building the Amazon store and launching 4 product(s) on Amazon including all the services in Exhibit A due before Company begins building the Amazon store.
>
> - A percentage of gross sales revenue is payable to Company on a sliding scale.  Company will send an invoice to Client every 3

---

[8] *Id.*
[9] *Id.*

months, payable within 7 days of sending the invoice, based on the following profit margins:

- 0% to 9.99% margin – Just One Dime receives nothing

- 10% to 19.99% margin – Just One Dime receives 5% sales revenue

- 20% to 29.99% margin – Just One Dime receives 10% sales revenue

- 30% and above margin – Just One Dime receives 15% sales revenue.

- Revenue share is capped at 15% sales revenue

- One time fees such as product launch fee and photography are not used to calculate profit margin. Profit margin is calculated based on ongoing fees such as manufacturing, shipping, Amazon fees, and PPC.

- $3,650 annual fee for account maintenance of Amazon store due 12 months after signing and every 12 months thereafter. For every $500,000 in annual revenue generated on the Amazon store an additional $3,650 annual fee is charged.

- $10,000 per product for any additional product launches, refundable if company fails to launch the product.

- 15% of sales price to Company if Client chooses to sell the business during this agreement or two years after termination of agreement by either party.

41.    Importantly, Exhibit C does not mention advertising costs, which have proven to be considerable, and are the responsibility of the investor.

42.    The initial fee of $10,000 per product is a "development fee" that goes entirely to JOD's "overhead" costs, so Mr. Krichman needed to raise the $40,000

initiation fee for his first four private label products *plus* the costs of the products themselves, shipping fees, trademark registration costs, and various other expenses for which he was responsible under the Agreement.

43.     Based on the investment plan JOD presented to him, Mr. Krichman believed he had found a reliable way to greatly supplement his income.

44.     On October 21, 2020, Mr. Krichman sent JOD a $10,000 payment via QuickBooks.  Mr. Krichman also wired an additional $30,000 of his launch fees to JOD.[10]  That $40,000 constituted Mr. Krichman's initiation fees.

45.     JOD assigned Defendant Brett George ("Defendant George") to Mr. Krichman as his "brand builder," touting him as a successful seller on Amazon.[11] JOD told Mr. Krichman he would have a weekly meeting with Defendant George via Slack to keep Mr. Krichman informed about his store's progress and answer any questions he had. However, after a short while, the weekly meetings were scrapped, as Defendant George had grown too busy.

---

[10] *See* Exhibit 6, September 22, 2020 Invoice for $40,000 from JOD and Bank of America statement showing payment; Exhibit 7, e-mail from Atalie Kniep to Mr. Krichman on October 21, 2020 at 10:50 a.m.; Exhibit 8, e-mail from Defendant Krichman to Atalie Kniep dated October 21, 2020 at 6:59 p.m.; and Exhibit 9, E-mail from Atalie Kniep to Mr. Krichman dated October 22, 2020 at 3:19 p.m.
[11] *See* Exhibit 2, "You're booked" e-mail of September 17, 2020, from Defendant Kniep to Mr. Krichman.

### D. Broken Promises

46.     Although JOD promised it would make the opening of Mr. Krichman's Amazon store quick and easy, Mr. Krichman was immediately met with roadblocks and added expenditures.

47.     In January, 2021, JOD assigned him two items to sell:  a plastic pet house and a pet stroller.

48.     In addition to the $10,000 initial investment had already paid for each of those products, Mr. Krichman had to make the following expenditures:

o   On January 29, 2021, Mr. Krichman paid JOD $300 for a brand logo creation; $509.53 for a sample of each product; $11,232 for 200 pet strollers; and $8,310 for 300 dog houses.[12]

o   On July 6, 2021, Mr. Krichman paid $6,912.26 for sea freight for the 300 dog houses.[13]

o   On July 28, 2021, Mr. Krichman paid JOD $500 in inspection fees for the two products, and 2,954.63 for import duties on the strollers.[14]

o   On August 9, 2021, Mr. Krichman paid JOD $7,977.60 (including a $231.60 credit card fee) for sea freight costs for 200 pet strollers.[15]

o   On November 15, 2021, Mr. Krichman paid JOD $1,500 for photography for the pet stroller and the same amount for photography for the dog house.  There was also a credit card fee of $89.86, bringing the total cost of the photography to $3,089.86.[16]

[12] *See* Exhibit 10, Invoice No. 1278, with Quickbooks Receipt for Payment.
[13] *See* Exhibit 11, Invoice No. 2067, with Quickbooks Receipt for Payment.
[14] *See* Exhibit 12, Invoice No. 2145, with Quickbooks Receipt for Payment.
[15] *See* Exhibit 13, Invoice No. 2212, with Quickbooks Receipt for Payment.
[16] *See* Exhibit 14, Invoice No. 2574, with Quickbooks Receipt for Payment.

49.     After more than a year and many thousands of dollars into his arrangement with JOD, Mr. Krichman still had not received *any* of his four products.  In fact, Mr. Krichman's Amazon store did not go up until March of 2022, and even then, there were supposed "technical glitches" that further delayed its opening.

50.     When Mr. Krichman inquired as to why, more than a year into the program, he still had not received any merchandise, JOD offered Mr. Krichman excuses about supply chain issues, shipping delays, and higher manufacturing costs.[17]

51.     On July 30, 2021, via Slack, Mr. Krichman asked Elizabeth Rapihana, a JOD employee, about the possibility of JOD refunding the $10,000 initial investment he had paid for the fourth product, as he needed funds to pay the mounting costs for the two products he had actually been assigned. Ms. Rapihana responded, in part, that JOD "cant [sic] provide refunds of the service fees as we are already providing those services."[18] JOD, to this day, has not assigned Krichman his third and fourth products, nor has it refunded his initiation fees for those products.

---

[17] *See* Exhibit 15, Seth Kniep video at https://vimeo.com/599719987/bef10ea325.
[18] *See* Exhibit 16, Slack communications of July 30, 2021 and August 2, 2021 between Mr. Krichman and JOD employee, Elizabeth Rapihana.

52.     When JOD failed to give him satisfactory information about the shipping schedule for his two assigned products, Mr. Krichman did his own research.   Mr. Krichman found United States Customs import records showing that "Just One Dime Group / N2 Ecom" received a shipment of 550 pet strollers in Los Angeles CA on July 16, 2021 and another 1,000 pet strollers in Houston TX on September 26, 2021.[19]   Mr. Krichman also unpleasantly discovered that Defendant George was the owner of N2 Ecom, a now defunct shipping company associated with JOD.  Since only 200 of those strollers went to Mr. Krichman, he was left to assume that other JOD seller(s), or perhaps Defendant George, had received the other 1,350.  It became apparent to Mr. Krichman that JOD has its own sellers competing against each other by assigning them identical products.

53.     Contrary to JOD's claims, there is nothing unique about the products it offers its sellers.  JOD advertises that it offers Chinese-made products that are not even sold on Alibaba, the Chinese equivalent of a wholesale marketplace.[20] However, the very same pet house JOD assigned to Mr. Krichman *is*, in fact, *also*

---

[19] *See* Exhibit 17, Import Record, Just One Dime.
[20] *See* Exhibit 3, JOD YouTube Video "Amazon Automation – FBA Business Run for You," with accompanying transcript (pages 16-17).

sold on Alibaba.[21]  The manufacturer for Mr. Krichman's and Alibaba's product is Hebei Sujie Bike Co., Ltd.[22]

54.    Neither of the products JOD assigned to Mr. Krichman has proven to be the type of high-quality merchandise with high profit margins promised by JOD.  Rather, these are low profit margin products with a lot of online competition.

55.    At best, JOD provides exactly the razor thin margins it claims not to. JOD controls the sales prices of its investors' products by negotiating the manufacturing, shipping, and other costs which make up the "cost of goods sold."

56.    JOD determines the sales prices for the products of investors like Mr. Krichman, but those prices are higher than competitors' pricing to give the illusion that the products can make a profit.  In reality, at JOD's determined prices, the products do not sell unless enough price-per-click (a/k/a "PPC") advertising is paid for to get the product marketed to consumers that will pay a higher price by purchasing the Amazon-advertised product rather than scrolling down the list to get a better price.  All the while, the JOD investor must pay recurring PPC and storage costs.

---

[21]  *See* Exhibit 18, Alibaba listing for pet house; Exhibit 19, Alibaba listing for pet stroller.
[22]  On Alibaba, the advertising photo shows that the pet stroller is manufactured by Hebei Sujie Bike Co., Ltd.  This same company is on the shipping label for Mr. Krichman's pet stroller.

57.     When products sit unsold in Amazon warehouses, the investor also gets hit with monthly storage fees.  To add insult to injury, during Q4 Amazon more than doubles the cost per cubic foot of storage for oversized items in its fulfilment centers.

58.     Despite JOD's professed expertise in Internet sales, it failed to foresee and prepare for the increased costs of manufacturing, shipping products from China, and PPC during the Covid pandemic. Thus, while Amazon had record sales during the Covid crisis, Mr. Krichman experienced serious losses in selling his two assigned products. The JOD products were competing with products with established histories, hundreds of online customer reviews, and lower prices.  To spur sales, Mr. Krichman was forced to pay Amazon's high PPC fees for advertising set and managed by JOD.

59.     As JOD continued to string him along, Mr. Krichman dutifully held up his end of the bargain, believing that if he kept investing money, he would eventually turn a profit.  Unfortunately, Mr. Krichman continued to lose money.

60.     Finally, after nearly two years of dealing with JOD, and still having received only two of the four products for which he paid initiation (and seeing the writing on the wall after hearing from dozens of other investors with similar experiences), Mr. Krichman decided he had had enough.  Mr. Krichman obtained

counsel, who sent Defendants DTPA demand letters on June 29, 2022.  Since then, JOD has cut off all communications with Mr. Krichman regarding his Amazon store, including all of JOD's regular and general investor updates.

61.     Not long after Mr. Krichman sent out his demand letters, Mr. George moved roughly half of Mr. Krichman's product inventory into Amazon from his own 3PL (third-party logistics company) warehouse without notifying Mr. Krichman or obtaining his permission.  Due to this unexpected dump of inventory, Mr. Krichman was forced to turn off all PPC and drastically lower his selling prices in a last-ditch effort to recover whatever he could for the inventory and mitigate the substantial inbound shipping charges and monthly Amazon fulfillment center storage fees (ranging from $600-800 per month).

### F. Intimidation Factor

62.     The following are examples of the high-pressure tactics that Mr. Krichman experienced from JOD:

- More than a year into his arrangement with JOD, when he still had not received his products, JOD sought to quiet him by pressuring him into entering in a Mutual Non-Disclosure Agreement.[23]  Mr.

---

[23] *See* Exhibit 20, Done For You by Just One Dime Mutual Non-Disclosure Agreement.

Krichman signed the agreement on behalf of FFDFY Products, LLC on November 19, 2021.  Not surprisingly, included in the information the agreement defines as "confidential" are the Client's Amazon "store sales figures, product sales figures, and any conversations between JOD and Client related to the development of Client's products and stores."[24]  In short, it effectively tries to silence Mr. Krichman from publicly voicing his complaints and does not even provide a real benefit in exchange for the silence. Mr. Krichman now considers this non-disclosure agreement to be void, since Defendants have breached the Services Agreement.

- JOD repeatedly attempted to pressure Mr. Krichman to switch over to JOD's Online Arbitrage program, which would gut the consumer protections from the DFY contract and is highly favorable to JOD against its investors.

### G.  The Disappearing Investment

63.     On October 13, 2022, Defendant Travis Kniep announced during the monthly JOD Done for You investor meeting that he is closing the Done For You private label program with which Mr. Krichman contracted, and that JOD will ***not***

---

[24] *Id*.

be offering *any* refunds to participants.  Thus, Mr. Krichman has invested money that he has no hope of recovering.  Defendants did not invite Mr. Krichman to this investor meeting despite the fact that he is a JOD investor.  Rather, Mr. Krichman watched a video recording of it that was shared on the Discord chat website.[25]

64.     On October 14, 2022, Travis Kniep sent a form e-mail to JOD investors (Mr. Krichman excluded) stating that the Done For You program would be ending on October 28, 2022.  Defendant Kniep reiterated that there will be no refunds for Done For You investors, but that investors are welcome to participate in JOD's Online Arbitrage program, which requires payment of an additional $20,000 to fund products.[26]  Mr. Krichman did not receive this mail personally, but saw it posted on the Discord website.  He also received a copy of it from a fellow JOD investor.

65.     Understandably, JOD's recent actions have caused Mr. Krichman a great deal of concern about his ability to regain the tens of thousands of dollars he has lost to Defendants.

---

[25] *See* Exhibit 21, Video recording of October 13, 2022 JOD investors meeting, at
https://vimeo.com/760079162/60e68a993f
[26] *See* Exhibit 22, Defendant Kniep's 10/14/2022 form e-mail to investors.

# VI.  CAUSES OF ACTION

**COUNT 1 –** *Failure to Register Securities Under the Securities Act of 1933*

66.  Plaintiff Krichman incorporates the preceding paragraphs as if repeated fully herein.

67.  Plaintiff Krichman alleges Count 1 <u>only</u> as to the JOD Corporate Defendants and Defendant Travis Kniep; <u>not</u> as to Defendants Actonicus Texas One, LLC; Brett George; Josiah Kniep; or Kimberly Kniep.

68.  Plaintiff Krichman alleges that the contract into which he and Defendants entered is an unregistered security, and as such it violates the Securities Act of 1933, as amended (the "Securities Act").  The Securities Act broadly defines securities "to include a long list of financial instruments, including 'investment contracts.'"  *SEC v. Arcturus Corp.,* 928 F.3d 400, 409 (5th Cir. 2019).  To be classified as a security, an investment contract must meet three requirements: "'(1) an investment of money; (2) in a common enterprise; (3) with profits derived from the efforts of others.'"  *Id.,* (citing *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); and quoting *Williamson v. Tucker,* 645 F.2d 404, 417-18 (5th Cir. 1981)).

69.    Plaintiff maintains that the Services Agreement is an investment contract that constitutes a security. The transactions between Plaintiff and these Defendants satisfy the three requirements enunciated by the Supreme Court in *Howey* and followed in *Arcturus.*   First, Mr. Krichman initially paid JOD $40,000 with the understanding that JOD would do all the work to set up his Amazon store. In fact, these Defendants repeatedly informed Mr. Krichman that this arrangement did not constitute a training course or a mentorship in online selling; that JOD would be doing *everything*.[27]   Secondly, the common enterprise agreed upon was for JOD to sell, manage, and control merchandise on the Amazon website on behalf of investor Mr. Krichman.  Thirdly, Mr. Krichman's profits were to be derived from the efforts of others (i.e., Defendants).   When evaluating whether an investment was made with an expectation of profits from the efforts of others, Texas courts ask whether the efforts made by others are "those essential managerial efforts which affect the failure or success of the enterprise."   *Pinter, supra,* at 73 (quoting *Searsy v. Com. Trading Corp.,* 560 S.W.2d 637, 638 (Tex. 1977).

---

[27] *See* Exhibit 3, https://www.youtube.com/watch?v=5aIIFqCW2ec&t=20s at 24:00, wherein Travis Kniep states "You will learn a ton because you're going to have a front row seat to everything.  But this is not training or a mentorship as that is much more time intensive.  So that would require a different pay structure."

70.     The JOD Corporate Defendants and Travis Kniep sold units in JOD's Done For You Private Label program to Mr. Krichman without first properly registering them as securities as required by the Securities Act.

71.     "The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities." *Swenson v. Engelstad,* 626 F.2d 421, 424 (5th Cir. 1980). Specifically, Section 5 of the Securities Act provides that unless "a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly. . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security. . ."  15 U.S.C. § 7e(a).  Section 12 of the Securities Act creates civil liability for sellers violating Section 5:

> Any person who . . . offers or sells a security in violation of section 77e of this title . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. §77l(a).

72.     To make a prima facie case for the unlawful sale of an unregistered security, a plaintiff must show "(1) the sale [of] or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the

mails or facilities of interstate commerce in connection with the sale or offer." *Engelstad*, 626 F.2d at 425.  Mr. Krichman contends he satisfies that test.  First, it is clear from the Services Agreement that the JOD Corporate Defendants and Defendant Kniep offered and sold units in the JOD investment. Secondly, the units Defendants sold were not properly registered as securities. Thirdly, these Defendants used online networking platforms to solicit and communicate with potential investors.  *See SEC v. Carter,* No. 4:19-CV-100SDJ, 2020 U.S. Dist. LEXIS 200391 at *4 (E.D. Tex. 2020) (concluding that communicating with potential investors through email, obtaining investment from at least one out-of-state investor, and obtaining funds from investors through wire transfer constituted offering and selling securities through interstate commerce).

73.    For Section 12 violations, the Securities Act provides a remedy of money damages that equates to a recission of the contract.  Specifically, Plaintiff can recover "the consideration paid for [the] security with interest thereon, less the amount of any income received thereon."  15 U.S.C. §77l(a).

**COUNT 2 –** *Failure to register Securities Under the Texas Securities Act*

74.    Plaintiff Krichman incorporates the preceding paragraphs as if repeated fully herein.

75.     Plaintiff Krichman alleges Count 2 <u>only</u> as to the JOD Corporate Defendants <u>and</u> Defendant Travis Kniep; not as to Defendants Actonicus Texas One, LLC; Brett George; Josiah Kniep; or Kimberly Kniep.

76.     Plaintiff Krichman also seeks damages under the Texas Securities Act ("TSA").  Under the TSA, a "dealer or agent may not sell or offer for sale any securities . . . unless the commissioner has issued a permit qualifying securities for sale for those securities to the issuer of the securities or a registered dealer."  TEX. GOV'T CODE §4003.001.  A plaintiff may sue a person who offers or sells a security in violation of the registration requirements for recission of the sale.  *Id.;* §4008.051. A plaintiff entitled to recission may "recover the consideration . . . paid for the security plus interest on the consideration at the legal rate from the date the buyer made the payment, less the amount of any income the buyer received on the security."  *Id.* §4008.05(a).

77.     The definition of "security" under the Texas Securities Act ("TSA") includes investment contracts.  The Texas Supreme Court has adopted a test to determine when investment contracts are securities under the TSA.  In *Life Partners, Inc. v. Arnold,* 464 S.W.3d 660, 670 (Tex. 2015), the court found that an "investment contract" for purposes of the Texas Securities Act means "(1) a contract, transaction, or scheme through which a person pays money (2) to

participate in a common venture or enterprise (3) with the expectation of receiving profits, (4) under circumstances in which the failure or success of the enterprise, and thus the person's realization of the expected profits, is at least predominately due to the entrepreneurial or managerial, rather than merely ministerial or clerical, efforts of others, regardless of whether those efforts are made before or after the transaction." *Arnold, supra,* at 667.

78.     Mr. Krichman contends the JOD Services Agreement fits this definition of an investment contract. To qualify as an investment contract security, "the transaction must be such that, in reality, the seller or another party other than the purchaser, exercises the predominant managerial or entrepreneurial control on which the purchaser's anticipation of profits is based." *Arnold* at 674-75.

79.     The Texas Securities Commissioner has not issued a permit qualifying the JOD Services Agreement as a security in Texas or registered any of the JOD Corporate Defendants or Defendant Travis Kniep to sell securities.[28]

80.     Accordingly, these Defendants are liable to Plaintiff for recission under the Texas Securities Act. Upon recission, Plaintiff is entitled to recover the consideration he paid for the JOD contract plus interest thereon at the legal rate

---

[28] *See* Exhibit 23, Certificates of the Texas Securities Commissioner affirming that the JOD, Companies and Defendant Travis Kniep were not registered with the State of Texas to sell securities, and that the JOD Services Agreements were not registered securities.

from the date of payment by him, less the amount of any income he received on the security, upon tender of the security.

**COUNT 3 –** *Breach of Contract*

81.     Plaintiff Krichman incorporates the preceding paragraphs as if repeated fully herein.

82.     Plaintiff alleges Count 3 <u>only</u> as to the JOD Corporate Defendants, and Defendant Travis Kniep; but <u>not</u> as to Defendants Actonicus Texas One, LLC, Kimberly Kniep, Josiah Kniep, and Brett George.

83.     The parties in this matter entered into a valid contract, i.e., the Services Agreement.

84.     Mr. Krichman performed all of his obligations under the contract.

85.     Those Defendants materially breached the contract by failing to complete most of their obligations under the contract, including JOD's promise to provide a weekly meeting with Defendant George.

86.     Those Defendants materially breached the contract by failing to assign Mr. Krichman the third and fourth products he was promised, although he had paid a $10,000 development fee for each of the said products.

87.     Those Defendants materially breached the contract by failing to assign him quality products with high profit margins as promised.

88.     As a result of these Defendants' material breach of the contract, Mr. Krichman has suffered damages.

**COUNT 4 – *Unjust Enrichment***

89.     Plaintiff Krichman incorporates the preceding paragraphs as if repeated fully here.

90.     Plaintiff Krichman alleges Count 4 <u>only</u> as to the JOD Corporate Defendants, and Defendants Travis Kniep, Josiah Kniep, Brett George, and Actonicus Texas One, LLC, but <u>not</u> Kimberly Kniep.

91.     Unjust enrichment is not a distinct independent cause of action, but rather a theory of recovery. *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied). A party may recover under an unjust enrichment theory where a person has obtained a benefit from another due to fraud, duress, or taking of undue advantage. *Id*.

92.     If Mr. Krichman does not prevail in his claim for legal remedies such as his breach of contract claim or his deceptive trade practices claim, he will lack a suitable remedy at law.

93.     Defendants' conduct in accepting Plaintiff's investment without carrying out its duties under the Services Agreement and improperly using these funds for themselves constitutes more than unfair conduct; Defendants profited from their own fraudulent claims and took undue advantage of Plaintiff.  Thus, Plaintiff seeks damages in unjust enrichment as an alternative remedy.

**COUNT 5 - *Violations of the Texas Deceptive Trade Practices – Consumer Protection Act (TEX. BUS. & COM. CODE §17.46 ET SEQ.)***

94.     Plaintiff Krichman incorporates the preceding paragraphs as if repeated fully here.

95.     Plaintiff alleges Count 5 as to <u>all</u> Defendants except for Actonicus Texas One, LLC, Kimberly Kniep, and Josiah Kniep.

96.     Defendants engaged in an unconscionable action or course of action that, to Plaintiff's detriment, took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree.  Specifically, Defendants lured Mr. Krichman into what they knew was an unfavorable business arrangement for him by taking unfair advantage of the fact that Defendants have far more knowledge about Amazon sales than Mr. Krichman does.

97.     Defendants falsely represented that they would  set up for Plaintiff a "full blown business" on Amazon, which they would "manage end-to-end,"

making it a "passive investment" for Mr. Krichman.  In actuality, Defendants took Mr. Krichman's money and failed to follow through on their claims that they would provide "turnkey service."  Mr. Krichman's initial investment of $40,000 went to pay Defendants and their staff, but in the end Defendants failed to provide the support and services they promised Mr. Krichman.  Mr. Krichman alone has had to bear the losses.

98.     Defendants fraudulently employed a "bait and switch" technique, promising a better-quality product, more marketable than the items they actually provided. JOD drew in Plaintiff by falsely advertising that it deals only  in "high ticket" products with large profit margins, when in reality it offered highly competitive products on which Mr. Krichman has taken a considerable loss. Defendants' fraudulent intent is demonstrated by evidence such as a video presentation in which Travis Kniep personally explains to potential investors how they can avoid liability by setting up shell companies.[29]

99.     Plaintiff Krichman has suffered economic damages from Defendants' deceptive and fraudulent behavior, and he is entitled to treble damages and attorney fees and costs under TEX. BUS. & COM. CODE §17.50.

---

[29] *See* Exhibit 3, YouTube Video of Travis Kniep at time stamp 37:20.

**COUNT 6 -** *Fraudulent transfer of funds*

100.   Plaintiff Krichman incorporates the preceding paragraphs as if repeated fully herein.

101.   Plaintiff Krichman brings this claim under the Texas Uniform Fraudulent Transfer Act ("TUFTA") under Chapter 24 of the Texas Business & Commerce Code.

102.   The fraudulent transfer was a transfer of funds Plaintiff Krichman invested in the JOD "Done For You" program.  Defendants Travis Kniep and his Done for You program contracted with Plaintiff Krichman to perform certain services.  Defendants failed to perform the services for which they contracted, and on information and belief, they used Mr. Krichman's investment to buy numerous properties.

103.   On information and belief, the fraudulent transfer was made by Defendants for their own financial benefit, and to the sole detriment of Plaintiff Krichman and similarly situated "creditors" of JOD.  The JOD Defendants now claim they do not have the funds issue refunds to the program's investors.

104.   Defendants transferred said assets without receiving a reasonably equivalent value in exchange for the transfer, as they transferred the funds without

transferring their debts; and Defendants intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due. *See* Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ §24.0005(2)(B).

105. Plaintiff Krichman has suffered damages due to the Defendants' fraudulent behavior, and is entitled to judgment in his favor for the value of the assets transferred up to the amount of any judgment he receives.

**COUNT 7 – *Conspiracy to Commit Fraud***

106. Plaintiff Krichman incorporates the preceding paragraphs as if repeated fully here.

107. First, the Defendants were members of a combination of two or more persons.

108. Second, the object of the combination was to accomplish (1) an unlawful purpose, or (2) a lawful purpose by unlawful means, the other claims in this Complaint.

109. Third, the members of the said group had a meeting of the minds on the object or course of action.

110.    Fourth, one or more of the members committed an unlawful, overt act to further the object or course of the action; to wit:  they used income improperly obtained from JOD Done For You investors to locate and/or purchase lucrative properties for the benefit of the Kniep family.[30]

111.    Several of these properties are in the name of Defendants Josiah Kniep or Actonicus Texas One, LLC.[31]

112.    Defendant Brett George solely owned a separate company (undisclosed to investors) that was profiting from investors like Mr. Krichman, and shipping additional items from Chinese manufacturers that would be competing against Done For You investors like Mr. Krichman.

113.    Plaintiff suffered damages as a proximate cause of Defendants' improper behavior.

## VII.  JURY DEMAND

114.    Plaintiff Travis Krichman asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

---

[30] Travis S. Kniep bragged in a JOD podcast that his wife Kimberly has a talent for finding valuable real estate investments for him.  *See* Exhibit 24, JOD video "Tax-Free Wealth w/ Tom Wheelwright CPA (WealthAbility)," dated July 26, 2021, at 33:00-33:45.
[31] *See* Exhibit 25, property records for Josiah Kniep and/or Actonicus.

## VIII.  <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff Krichman prays for judgment as follows:

     a.  Actual and economic damages including liquidated and unliquidated damages;

     b.  Punitive damages;

     c.  Treble damages, where appropriate;

     d.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law;

     e.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law from the date of judgment until paid in full;

     f.  Court costs;

     g.  Attorney fees; and

     h.  All other relief, special or general, legal or equitable, as Plaintiff may be shown to be justly entitled to receive.

Respectfully submitted on this _4th_ day of November, 2022.

Rain Levy Minns Udall
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com

ATTORNEY IN CHARGE FOR
PLAINTIFF TRAVIS KRICHMAN